UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

BRAVA INVESTMENTS DEVELOPMENT LTD.,

                Plaintiff,

  -against-

HSBC BANK USA N.A.,

                Defendant.

------------------------------------------------------------------X

**COMPLAINT**

07 CV 3205

JUDGE MARRERO

RECEIVED APR 20 2007 U.S.D.C. S.D.N.Y. CASHIERS

    Plaintiff, by its attorneys, McLAUGHLIN & STERN, LLP, as and for its Complaint alleges:

### PARTIES

1. Plaintiff BRAVA INVESTMENTS DEVELOPMENT LTD. ("BRAVA" or "Plaintiff") is a corporation organized and subsisting under the laws of the British Virgin Islands, with its address at Woodbourne Hall, P.O. Box 3162, Road Town, Tortola, BVI.

2. Upon information and belief, Defendant HSBC BANK USA N.A. is a banking corporation organized and subsisting under the laws of the State of Delaware, with its offices and principal place of business in Wilmington, Delaware, and is the principal subsidiary of HSBC USA Inc., and indirectly held, wholly owned subsidiary of HSBC North America Holdings Inc., a multi-bank holding. HSBC BANK USA N.A. maintains many offices and branches in the State of New York and in this judicial district, including, *inter alia*, a division known as HSBC Private Bank International ("HSBC PBI"), which is located at 452 Fifth Avenue, Tower XI, New York, New York 10018 (HSBC BANK USA N.A. and HSBC PBI are hereinafter collectively referred to as "HSBC" or ("Defendant").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to the following statutes:

(a) Title 28 U.S.C. §1332, which provides federal jurisdiction of all civil actions where the matter and controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a foreign state, defined in Section 1603(a) of Title 28 U.S.C., as plaintiff, and citizens of a State;

(b) Title 12 U.S.C. §632, which provides federal jurisdiction over any suit of a civil nature to which a corporation organized under the laws of the United States is a party, arising out of transactions involving international or foreign banking, or out of other international or foreign financial operations; and

(c) Title 28 U.S.C. §1331, which provides federal jurisdiction over suits arising under the laws of the United States.

4. This Court has personal jurisdiction over HSBC under the State of New York's long-arm jurisdiction statute in that HSBC transacts the business within the State of New York (New York CPLR §302(1) and further committed tortious acts within the State of New York (New York CPLR §302(2), and further committed tortious acts without the State causing injury to BRAVA within the State of New York, and HSBC regularly does or solicits business, or engages in any other persistence course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the State of New York, and also expects or should reasonably expect the act to have consequences in the State of New York and derives substantial revenue from interstate or international commerce (New York CPLR §302(3)(i), (ii)). Furthermore, HSBC provided for the non-exclusive jurisdiction of any court sitting in New York, or in any

2

location which the office which any account is maintained is located, in any action or proceeding arising out or relating to any of BRAVA's accounts with HSBC.

5. Venue lies in this district pursuant to Title 28 U.S.C. §1391(a)(1), 1391(a)(2), 1391(b)(1), 1391(b)(2), and 1391(c).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6. On or about August 30, 2000 BRAVA entered into an agreement with HSBC PBI whereby it became a client of HSBC PBI. In so doing, BRAVA executed a document entitled "Client Application", and in conjunction therewith, HSBC provided to BRAVA a document entitled "HSBC Private Bank ... International Private Banking Terms and Conditions For Accounts" (the "Terms and Conditions"). The Client Application (a copy of which is annexed hereto as Exhibit "A") and the "Terms and Conditions" (a copy of which is annexed hereto as Exhibit "B") are hereinafter referred to collectively as the "BRAVA-HSBC Agreement".

7. Pursuant to and in accordance with the BRAVA-HSBC Agreement, on or about August 30, 2000, BRAVA opened an account with HSBC PBI under Account No. 605059411 whereby HSBC PBI from time to time, was to purchase stock, bonds, notes or other securities for BRAVA's account as BRAVA instructed, and to sell, transfer and/or redeem the same when BRAVA also so instructed, and to provide statements to BRAVA conveying accurate and up-to-date information concerning the status of Account No. 6050594111 and the assets held therein.

8. Pursuant to and in accordance with the BRAVA-HSBC Agreement, on or about October 23, 2000, BRAVA adopted a Corporate Banking Resolution For Corporate Power Of Attorney and filed same with HSBC PBI, whereby BRAVA appointed Raymond Kassin ("Mr. Kassin"), an individual residing in Buenos Aires, Argentina, to act as its attorney-in-fact in its

dealings and transactions with HSBC PBI (which was then known as HSBC Republic N.Y.), an appointment to which HSBC PBI agreed and consented.

9. In the Spring of 2001, BRAVA, by Mr. Kassin, instructed HSBC PBI to purchase for its account certain bonds issued by Multicanal S.A.("Multicanal"), which entity, upon information and belief, is a *sociedad anonima* organized under the law of the Republic of Argentina, and which operates cable television systems in Argentina and other South American countries.

10. On or about June 12, 2001, HSBC PBI purchased for BRAVA face value of $2,000,000 13.125% Series E Notes, issued by Multicanal, with a maturity date of April 15, 2009, CUSIP No. 62544FAL3 (collectively, the "BRAVA Multicanal Holding"), and held the same for BRAVA in Account No. 605059411, to be sold, transferred, or redeemed when BRAVA so instructed, as was thereafter reflected in monthly statements issued by HSBC PBI and sent to BRAVA.

11. Upon information and belief, on or about January 31, 2003, Multicanal announced a restructuring proposal involving its outstanding debt and issued a formal Offer To Purchase $100 million dollar of its outstanding debt from noteholders. Included among the variants of the offer was a specific offer to tender the bonds at a price of $300 per $1,000 of principal amount tendered (i.e., 30% of the face value of the bonds), including, *inter alia*, the 13.125% Series E Notes held by BRAVA. Upon information and belief, the Offer To Purchase was thereafter followed by Multicanal's issuance of a Solicitation Statement, dated February 7, 2003, through its Dealer Manager and Solicitation Agent, JP Morgan Securities Inc., seeking to execute an *acuerdo preventivo extrajudicial* (the "APE"). The APE provided that the Expiration Date for the offer to allowing noteholders to redeem their holdings expired on March 12, 2003. (the Offer

To Purchase and the Solicitation Statement are hereinafter referred to collectively as the "2003 Redemption Offer").

12. In furtherance of the 2003 Redemption Offer, BRAVA received a document from HSBC relating to the 2003 Redemption Offer entitled "EVENT NUMBER 3248007---FIRST NOTIFICATION" that stated, *inter alia*, that if the 2003 Redemption Offer were to be extended to a date after May 1, 2003, noteholders would have five (5) business days from May1, 2003 to withdraw their consents and any notes tendered.

13. Thereafter, upon information and belief, as a result of intervening events and/or internal decisions, Multicanal extended the 2003 Redemption Offer on several occasions, such that it ultimately did not expire until on or about June 20, 2006.

14. At no time from January 31, 2003, after BRAVA received the 2003 Redemption Offer, until the date hereof, did Mr. Kassin, or any other individual authorized by BRAVA to act on its behalf, accept the 2003 Redemption Offer, either orally or in writing, nor did Mr. Kassin, or any other individual authorized by BRAVA to act on its behalf, direct or authorize HSBC to tender the BRAVA Multicanal Holding to Multicanal to enable BRAVA to participate in the 2003 Redemption Offer.

15. It was not until March 31, 2006 that BRAVA learned of the purported exercise by HSBC of the 2003 Redemption Offer and that HSBC had tendered the BRAVA Multicanal Holding or had otherwise sought to redeem said Notes in connection with the 2003 Redemption Offer.

16. At no time from or after May 1, 2003 until the date hereof, did Multicanal and/or HSBC provide any notice, either orally or in writing, to BRAVA, giving BRAVA five business days from May 1, 2003 to withdraw its consent, or purported consent, and any Notes representing

5

the BRAVA Multicanal Holding tendered, or purportedly tendered by HSBC on behalf of BRAVA.

17. On or about March 29, 2006, the Notes comprising the BRAVA Multicanal Holding were trading at approximately $74 in the bond market where they could be sold and purchased..

18. On or about April 1, 2006, Mr. Kassin, as Attorney-In-Fact for BRAVA, instructed HSBC to sell the BRAVA Multicanal Holding at the then current market price.

19. Shortly thereafter, however, HSBC advised BRAVA that it could not sell the Notes, as they were "frozen", having been tendered in connection with the 2003 Redemption Offer.

20. By reason of HSBC's failure and refusal to sell the Notes, BRAVA was unable to take advantage of the then current market price of $74 and suffered damage, as more fully set forth below.

21. In or about June, 2006, as part of its ongoing debt restructuring, Multicanal offered holders of its bonds the opportunity to elect to redeem their bonds under three discrete options. One option enabled the holders to receive Restricted Notes, bearing interest initially at 2 1/2% per annum with interest then "stepping up" over a 10-year period in accordance with a schedule, at a ratio of $ 1,050 principal for each $1,000 principal amount of notes surrendered (hereinafter, "Option #1 – Par Bond Option").

22. Thereafter, on or about June 14, 2006, Mr. Kassin, as Attorney-in-Fact for BRAVA, instructed HSBC to tender the BRAVA Multicanal Holding in exchange for Option #1 – Par Bond Option. This transaction would have enabled BRAVA to recoup a substantial portion of its $2,000,000 investment in the BRAVA Multicanal Holding.

23. By letter dated June 19, 2006, HSBC responded that it could not proceed in accordance with BRAVA's instructions and that it accordingly could not, or would not, tender

the BRAVA Multicanal Holding in exchange for Option #1 – Par Bond Option, "as the Issuer has informed us that only those holders who did not tender their bonds in the 2003 Exchange Offer can participate."

24. Thereafter, by letter dated June 22, 2006, BRAVA, by Mr. Kassin, advised HSBC that it had neither tendered the bonds in the 2003 Redemption Offer nor authorized such redemption, and demanded that the subject bonds be immediately tendered for Option #1 – Par Bond Option, as per the letter of June 14, 2006. BRAVA further demanded that HSBC provide documentary evidence of BRAVA's purported instructions or authorization with respect to the tender of the bonds in the 2003 Redemption Offer.

25. Notwithstanding BRAVA's demand on June 22, 2006 that HSBC provide documentary evidence of BRAVA's purported instructions or authorization with respect to the tender of the bonds in the 2003 Redemption Offer, and subsequent written and oral demands that such evidence be produced as set forth below, HSBC has failed and refused to produce any such instructions or authorization.

26. Upon information and belief, in or about 2003 at a time not known to BRAVA, and without BRAVA's knowledge, consent, instructions or authorization, HSBC tendered the BRAVA Multicanal Holding and sought to redeem the notes in connection with the 2003 Redemption Offer. In so doing, HSBC acted without authority and in derogation of its obligations to BRAVA under the BRAVA-HSBC Agreement.

27. On August 23, 2006, HSBC wrote to counsel for BRAVA, stating that the Bank's "records indicate that in 2003 Brava, through its authorized representative, Raymond Kassin, instructed HSBC to tender Brava's Multicanal bonds for redemption." HSBC further contended that it had "complied with these instructions, however, due to problems encountered by

7

Multicanal the tender offer was not permitted to proceed". HSBC stated that earlier in 2006 it had contacted Multicanal in an effort to tender Brava's bonds for redemption in accordance with the terms of the new Multicanal tender offer" and that it had been "advised by Multicanal that as the bonds were previously tendered Multicanal would not accept the bonds for redemption and Multicanal credited the Brava account at HSBC with the funds that were due to Brava" – i.e., at the rate of $.30 on the dollar, as per the 2003 Redemption Offer, rather than in accordance with Option #1 – Par Bond Option.

28.  Thereafter, on August 29, 2006, counsel for BRAVA forwarded a letter to HSBC in response to HSBC's August 23rd letter, stating, *inter alia*, that "Brava's sole communication regarding this matter was given on June 14, 2006, when it sent a written instruction to HSBC to tender its holding in a $2MM face value MULTICANAL 13.125% 4/15/09, CUSIP #62544FAL3 in exchange for "Option #1 – Par Bond Option" under Multicanal's Debt Restructuring." Brava's counsel further asserted that Brava disputed the Bank's claim that it possessed records "reflecting the instruction of Brava's authorized representative Raymond Kassin, to tender Multicanal's bonds for redemption in 2003, and stated that she had previously asked Mr. Guillermo Campelo, an HSBC officer, more than a month prior "for a copy of such alleged instructions which to this date were not provided."

29.  The letter concluded by requesting that the Bank "immediately send us a copy of Mr. Kassin's 2003 instructions regarding the issue in question."

30.  HSBC has never responded to the August 29th letter and has failed and refused to produce any document purporting to memorialize any instructions to tender the BRAVA Multicanal Holding in response to the 2003 Redemption Offer, whether from Mr. Kassin or any other individual affiliated with BRAVA or purporting to act on its behalf.

31. From the opening of Account No. 605059411 until the date hereof, HSBC has provided monthly Consolidated Statements to BRAVA containing information concerning, *inter alia*, Checking Balances and activity, Managed Call Deposit Balances and activity and Investments (including Custody Portfolio, consisting of the BRAVA Multicanal Holding). Although, the BRAVA Multicanal Holding was specifically identified therein, at no time did any Consolidated Statement contain information confirming the purported tender of the BRAVA Multicanal Holding in 2003.

## AS AND FOR A FIRST CLAIM FOR RELIEF
## (BREACH OF CONTRACT)

32. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "31" with the same force and effect as though more fully set forth herein again at length.

33. As set forth hereinabove, on or about August 30, 2000, BRAVA and HSBC entered into the BRAVA-HSBC Agreement, for valuable consideration.

34. Pursuant to and in accordance with the BRAVA-HSBC Agreement, BRAVA opened and maintained an account with HSBC PBI (Account No. 6050559411), whereby HSBC PBI obligated itself to purchase stock, bonds, notes, or other securities for BRAVA's account as BRAVA instructed, and to sell, transfer and/or redeem the same only when BRAVA also so instructed.

35. By tendering the BRAVA Multicanal Holding and seeking to redeem the notes in connection with the 2003 Redemption Offer, in or about 2003 not known to BRAVA, HSBC has materially breached the BRAVA-HSBC Agreement by taking actions purportedly on behalf of BRAVA without BRAVA's knowledge, consent, instructions or authorization, and by acting

without authority and in derogation of its obligations to BRAVA under the BRAVA-HSBC Agreement.

36. By reason of the foregoing, HSBC has breached its obligation of good faith and fair dealing under the BRAVA-HSBC Agreement.

37. By reason of the foregoing, BRAVA has been materially and substantially damaged, in that (a) it was unable to sell the BRAVA Multicanal Holding at the then current market price on April 1, 2006 and (b) its written instructions on June 14, 2006 to HSBC to tender the BRAVA Multicanal Holding in exchange for "Option No. 1 – Par Bond Option" has not been honored by either HSBC or, upon information and belief, Multicanal and its agents.

38. By reason of the foregoing, BRAVA has suffered damages.

39. By reason of the foregoing, BRAVA is entitled to damages in an amount to be determined at trial but not less than $880,000, together with interest, as provided by law, and costs, including reasonable attorneys' fees.

## AS AND FOR A SECOND CLAIM FOR RELIEF

### (NEGLIGENCE)

40. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "31" and "33" through "39" with the same force and effect as though more fully set forth herein again at length.

41. In order to induce BRAVA to open Account No. 6050594111 and to entrust the BRAVA Multicanal Holding to HSBC in such custody account with HSBC PBI, HSBC held itself out to BRAVA and the general public as an institution which was experienced in, familiar with, and experienced in, the buying and selling of securities, and other similar transactions related thereto, such as tendering of bonds pursuant to an offer to redeem such securities assets

held therein, and that it would not only act in good faith, but would exercise reasonable diligence and the care and skill ordinarily possessed by institutions or persons engaged in the same business in this State.

42.     As set forth hereinabove, on or about April 1, 2006, BRAVA, by Mr. Kassin as its Attorney-In-Fact, instructed HSBC to sell the BRAVA Multicanal Holding at the then current market price, and on or about June 14, 2006, BRAVA, by Mr. Kassin as its Attorney-In-Fact, instructed HSBC to tender the BRAVA Multicanal Holding in exchange for Option No. 1 – Par Bond Option.

43.     Upon information and belief, as set forth herein above, in or about 2003, at a time not known to BRAVA, and without BRAVA's knowledge, consent, instructions or authorization, HSBC tendered the BRAVA Multicanal Holding and sought to redeem the notes in connection with the 2003 Redemption Offer.

44.     At all relevant times, by reason of maintaining the BRAVA Multicanal Holding, after its initial purchase, in the custodial account (No. 6050559411), HSBC was under a duty to act in good faith, to exercise reasonable diligence and the care and skill ordinarily possessed by institutions or persons engaged in the same business in this State, to properly supervise and use reasonable and prudent care in the management of said account, and to safeguard the assets held therein, and to honor BRAVA's instructions, through its Attorney-In-Fact, Mr. Kassin, and to otherwise refrain from taking any action with respect to the BRAVA Multicanal Holding, in the absence of specific instructions and authorization from BRAVA.

45.     HSBC negligently failed to properly supervise and use reasonable and prudent care in the management of Account No. 6050559411, and to safeguard the assets held therein, by

tendering the BRAVA Multicanal Holding in 2003, without the knowledge, consent, instruction and authorization of BRAVA.

46. In so doing, HSBC failed to manage or handle Account No. 60505559411 in a skillful, prudent, reasonable and professionally expert manner and failed to act in accordance with reasonably prudent standards of conduct prevailing among and known to experienced and expert financial institutions trading in securities, as a result of which BRAVA has been denied the opportunity and ability to (a) sell the BRAVA Multicanal Holding on or about April 1, 2006 at the then current market price and (b) to tender the BRAVA Multicanal Holding on or about June 14, 2006 in order to participate in Option #1 – Par Bond Option and thereby redeem said bonds.

47. By reason of the foregoing, BRAVA has suffered damages, which were caused solely by the negligence of HSBC.

48. By reason of the foregoing, BRAVA is entitled to damages in an amount to be determined at trial, but not less than $880,000, together with interest, as provided by law, and costs.

## AS AND FOR A THIRD CLAIM FOR RELIEF

## (CONVERSION)

49. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "31", "33" through "39" and "41" through "48" with the same force and effect as though more fully set forth herein again at length.

50. By reason of its tendering of the BRAVA Multicanal Holding in connection with the 2003 Redemption Offer, without the knowledge, consent, instruction or authorization of BRAVA, and the subsequent failure and refusal by HSBC and/or Multicanal to accept BRAVA's

12

instructions and authorization for HSBC to (a) sell the BRAVA Multicanal Holding on April 1, 2006 at the then current market price and (b) tender the BRAVA Multicanal Holding on or about June 14, 2006 in exchange for Option #1 – Par Bond Option, HSBC has converted the BRAVA Multicanal Holding.

51. Notwithstanding BRAVA's demands that HSBC sell the BRAVA Multicanal Holding on April 1, 2006 at the then current market price and tender the BRAVA Multicanal Holding on or about June 14, 2006 in exchange for Option #1 – Par Bond Option, either of which would have enabled BRAVA to recoup a substantial portion of its investment in the BRAVA Multicanal Holding, and its subsequent demands for the return of its investment therein, HSBC has failed and refused to return said investment to BRAVA or to otherwise repay the funds with which BRAVA purchased the BRAVA Multicanal Holding.

52. By reason of the foregoing, and HSBC's conversion of the BRAVA Multicanal Holdings, BRAVA suffered damages.

53. By reason of the foregoing, BRAVA is entitled to damages in an amount to be determined at trial but not less than $880,000, together with interest, as provided by law, and costs.

WHEREFORE, plaintiff respectfully requests that judgment be entered against Defendant:

(A) With respect to the FIRST CLAIM FOR RELIEF, by awarding plaintiff damages in an amount to be determined at trial but not less than $880,000, together with interest, as provided by law, and costs, including reasonable attorneys' fees.

(B) With respect to the SECOND CLAIM FOR RELIEF, by awarding plaintiff damages in an amount to be determined at trial but not less than $880,000, together with interest, as provided by law, and costs.

(C) With respect to the THIRD CLAIM FOR RELIEF, by awarding plaintiff damages in an amount to be determined at trial but not less than $880,000, together with interest, as provided by law, and costs.

(D) Awarding plaintiff such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a jury trial of all claims for relief that may be tried before a jury.

Dated: New York, New York
April 16, 2007

McLAUGHLIN & STERN, LLP

By: _____
STEVEN J. HYMAN (SH 2097)
PAUL H. LEVINSON (PL 5528)
Attorneys for Plaintiff
260 Madison Avenue, 18th Fl.
New York, NY 10016
Tel.: (212) 448-1100
Fax: (212) 448-0066

2007 CV _____
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRAVA INVESTMENTS DEVELOPMENT, LTD.,

                Plaintiff,

   -against-

HSBC BANK USA, N.A.,

                Defendant.

SUMMONS AND COMPLAINT

                McLAUGHLIN & STERN, LLP
                260 Madison Avenue
                New York, NY 10016
                (212) 448-1100

                Attorneys for Plaintiff